UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------
ROY VAN ALLEN,

                Plaintiff(s),

       -against-

NEW YORK CITY SCHOOL CONSTRUCTION
AUTHORITY, SHARON GREENBERGER, and
LORRAINE GRILLO, in their individual and
official capacities

                Defendant(s).
---------------------------------------------------------

**MEMORANDUM & ORDER
17-CV-2176 (NGG) (VMS)**

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff Roy Van Allen, a technical inspector at Defendant New York City School Construction Authority ("SCA"), brings this action against SCA, Sharon Greenberger, and Lorraine Grillo,[1] alleging that Defendants unlawfully retaliated against him after he reported and publicized concerns about hazardous construction conditions at New York City public schools. Plaintiff asserts claims under 42 U.S.C. § 1983 for violations of his rights under the First and Fourteenth Amendments of the United States Constitution; New York State Human Rights Law, codified at N.Y. Exec. Law § 296 *et seq.*; and New York City Human Rights Law, codified at N.Y.C. Admin. Code § 8-107 *et seq.* (Prop. Second Am. Comp. ("PSAC") (Dkt. 37-2) ¶¶ 172-203.) On September 30, 2018, the court dismissed Plaintiff's First Amended Complaint ("FAC") without prejudice. *See Van Allen v. N.Y.C. Sch. Constr. Auth.*, No. 17-CV-2176 (NGG), 2018 WL 4783966 (Sept. 30,

---

[1] Defendant Grillo is named in this action as "Lorrane" Grillo. Defendants have informed the court that the correct spelling of her name is "Lorraine" Grillo. (*See* Def. Mot. for Ext. of Time (Dkt. 10) at 1.)

1

2018). Plaintiff now seeks leave to file the PSAC. (*See* Pl. Mot. to Amend ("Mot.") (Dkt. 37-1).)

For the reasons set forth below, Plaintiff's motion is DENIED.

## I. BACKGROUND

### A. Factual Allegations

The court takes the following statement of facts from the PSAC, the well-pleaded allegations of which the court accepts as true. *See Indiana Pub. Ret. Sys. v. SAIC, Inc.*, 818 F.3d 85, 92 (2d Cir. 2016).

SCA is a municipal entity responsible for constructing and maintaining New York City public school buildings. (PSAC ¶ 8.) Plaintiff has been a technical inspector with SCA since 2000. (*Id.* ¶ 12.) From 2000 to 2009, Plaintiff worked within what is now called the Construction Inspection Division ("CID"), where he was responsible for ensuring that public school buildings complied with the New York City Building Code. (*Id.* ¶ 16-17.) During this period, Plaintiff also conducted training seminars for other employees, developed SCA handbooks and spreadsheets to facilitate inspections, and assisted in the creation of the civil service test for the "Technical Inspector for Plumbing" position. (*Id.* ¶¶ 18-21, 24-25.) Because he maintains, *inter alia*, a master plumber license and a master fire suppression license, Plaintiff was also just one of three SCA employees authorized to sign off on plumbing and fire suppression inspections. (*Id.* ¶¶ 22-23.)

Plaintiff's standing at SCA changed radically in early 2009. On January 3, 2009, Plaintiff inspected a public school, P.S. 125M, and discovered "numerous violations," including a defective fire sprinkler system. (*Id.* ¶¶ 26-28, 34.) In a series of emails, Plaintiff reported these violations to various supervisors and repeatedly asserted that P.S. 125M was a "[w]reck" with conditions that endangered schoolchildren. (*Id.* ¶¶ 30-35). At a subsequent SCA

meeting on January 7, 2009, a supervisor urged Plaintiff and other inspectors to be "cooperative" with management so that school construction could proceed on schedule. (*Id.* ¶ 36.) Plaintiff and two of his colleagues "spoke out and questioned" the supervisor at the meeting. (*Id.* ¶ 37.) Later that night, Plaintiff was called by a different supervisor, who told him that he was "going to be reassigned by [Defendant and SCA CEO] Sharon Greenberger." (*Id.* ¶ 38.)

Two days after the meeting, on January 11, 2009, Plaintiff was reassigned from the CID to the Construction Management Division ("CMD"), where he enjoys far fewer benefits and substantive responsibilities. (*Id.* ¶ 41, 60, 152-57.) Another inspector who "spoke out" at the January 7 meeting, Sherif Khamel, was also reassigned. (*Id.* ¶ 45.) As a consequence of this reassignment, Plaintiff is no longer eligible for overtime and no longer performs compliance inspections. (*Id.* ¶¶ 41, 47.) Plaintiff is the only technical inspector at SCA assigned to the CMD; every other technical inspector operates within the CID. (*Id.* ¶ 13.) The day after his reassignment, Plaintiff sent an email to numerous SCA supervisors and union representatives "complaining of retaliation for warning the Inspector General of SCA and his superiors of dangerous plumbing situations at the various schools, lack of oversight, dangers to the children and mismanagement." (*Id.* ¶ 40.)

A few months after the reassignment, Plaintiff began publicizing his concerns about the safety of the City's public schools. In April 2009, the *New York Daily News* published two articles naming Plaintiff and quoting his concerns about public school code violations. (*Id.* ¶ 49.) In June and July 2009, Plaintiff sent letters complaining of code violations in city schools to the New York County District Attorney's Office, the New York State Attorney General's Office, and a New York State Senator. (*Id.* ¶¶ 50, 62, 64.)

3

In November 2009, Plaintiff's union filed a grievance with SCA on Plaintiff's behalf, arguing that Plaintiff was being forced to work outside of his title despite SCA's need for more inspectors. (*Id.* ¶ 72.) An arbitrator ruled against Plaintiff in August 2010. (*Id.* ¶ 81.)

In 2011, over a period of six to ten months, an SCA employee frequently referred to Plaintiff as a "rat" because Plaintiff "report[ed] misconduct within SCA to the newspapers." (*Id.* ¶ 82.) Multiple SCA employees witnessed these incidents, and Plaintiff also reported them to a supervisor. (*Id.* ¶ 83.) "Throughout 2009 to 2014 and parts of 2015," Plaintiff repeatedly asked a supervisor to allow him to return to the CID and resume inspector duties, but was consistently told that "Defendant Greenberger would not approve Plaintiff's return to . . . any inspector position because of Plaintiff['s] prior conduct of going to the newspapers and outside the SCA." (*Id.* ¶ 114.) Plaintiff also alleges, however, that Greenberger left SCA in 2013 and that the President and CEO position was subsequently assumed by Defendant Lorraine Grillo. (*Id.* ¶ 10.)

From December 2013 to March 2017, Plaintiff applied for numerous technical inspector positions within SCA, often at the behest of former supervisors at the CID, and was repeatedly rejected in favor of less-qualified applicants. (*Id.* ¶¶ 94–151.) In April 2014, for example, Plaintiff's application for an inspector position was rejected in favor of a candidate who had previously been subject to SCA disciplinary action. (*Id.* ¶¶ 96-99.) In February 2017, Plaintiff applied for the Managing Inspector position after being expressly encouraged to do so by the director of the CID. (*Id.* ¶ 131.) Plaintiff's application, however, was rejected in favor of a candidate who, unlike Plaintiff, did not have two professional licenses that were listed as desired qualifications in the job description. (*Id.* ¶¶ 133, 137.) Plaintiff was also rejected for several other inspector positions in favor of applicants who did

not have comparable professional licenses, professional certifications, and experience. (*Id.* ¶¶ 101-111, 122-124.)

In March 2017, Plaintiff asked for a copy of his personnel file and found "[n]othing . . . that would give SCA a reason to disqualify him from any of the jobs he had applied for." (*Id.* ¶ 138.) Plaintiff's work evaluations "have always been above average." (*Id.* ¶ 151.) Plaintiff alleges that Defendants Greenberger and Grillo, who managed "all aspects of the application, interview and hiring process for all inspector positions" during their respective tenures as CEO of SCA, were ultimately responsible for rejecting his applications. (*Id.* ¶¶ 90, 161.) In January 2016, an SCA employee told Plaintiff that "management will never allow [him] to get a Plumbing Inspection job." (*Id.* ¶ 118.) In April 2017, after Plaintiff had made an informal request to transfer back to the CID, Vice President Gordon Tung advised Plaintiff that he had spoken with Grillo and that she "would not agree to transfer Plaintiff and never gave a reason." (*Id.* ¶¶ 135, 141.)

### B. Procedural History

Plaintiff filed his complaint on April 10, 2017, which he amended on August 4, 2017. (Compl. (Dkt. 1); First Am. Compl. (Dkt. 18).) On October 27, 2017, Defendants moved to dismiss the FAC under Federal Rule of Civil Procedure 12(b)(6), arguing that Plaintiff had failed to sufficiently plead either a First Amendment claim or the personal involvement of Greenberger and Grillo. (Dkt. 22.) In his response to Defendants' motion, Plaintiff affirmatively discontinued all his claims except for his First Amendment retaliation claim under 42 U.S.C. § 1983. (Mem. in Opp. to Mot. to Dismiss ("Pl. Opp.") (Dkt. 24) at 17.) On September 30, 2018, the court granted Defendants' motion to dismiss without prejudice, holding that Plaintiff had failed to sufficiently plead: (1) a causal connection between his protected speech and the alleged retaliatory acts during the applicable statute of limitations period, (2) the personal involvement of Defendants Greenberger

and Grillo in the alleged retaliatory acts, and (3) the existence of a policy or custom of retaliation at SCA. *See generally Van Allen*, 2018 WL 4783966.

Plaintiff filed the instant motion on Dec. 14, 2018. (*See* Mot.; Mem. in Supp. of Mot. ("Mem.") (Dkt. 37-4); PSAC (Dkt. 37-3).) In support of his motion, Plaintiff argues that the PSAC "satisfactorily addresses the deficiencies stated by [the court]" and "as such, Plaintiff's new pleading shall withstand any prospective motion to dismiss." (Mem. at 3.) Defendants opposed to Plaintiff's motion, arguing that the PSAC fails to cure deficiencies in the FAC and that amendment would be futile because the PSAC cannot survive a motion to dismiss. (*See* Defs. Mem. in Opp. to Mot. ("Defs. Opp.") (Dkt. 37-5).) The motion was fully briefed on March 4, 2019. (*See* Pl. Reply ("Reply") (Dkt. 37-6).)

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 15(a)(2) provides that "[t]he court should freely give leave [to amend] when justice so requires." Nevertheless, a motion to amend should be denied if there is an "apparent or declared reason—such as . . . futility." *Foman v. Davis*, 371 U.S. 178, 182 (1962). The decision to grant or deny leave to amend is within the court's discretion. *See, e.g.*, *Allstate Ins. Co. v. Elzanaty*, 916 F. Supp. 2d 273, 303 (E.D.N.Y. 2013) (citations omitted).

"[T]he standard for denying leave to amend based on futility is the same as the standard for granting a motion to dismiss." *IBEW Local Union No. 58 Pension Tr. Fund & Annuity Fund v. Royal Bank of Scotland Grp., PLC*, 783 F.3d 383, 389 (2d Cir. 2015). "The proposed Amended Complaint may therefore be scrutinized as if defendant's objections to the amendments constituted a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." *Gopysingh v. Santiago*, No. 00-CV-2951 (JSM) (HBP), 2001 WL 1658280, at *1 (S.D.N.Y. Dec. 26, 2001) (citation omitted).

In considering the proposed complaint, the court is conscious that "an amended complaint ordinarily supersedes the original, and renders it of no legal effect." *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) (citation omitted).

## III. DISCUSSION

Defendants make three arguments in opposition to Plaintiff's motion. First, Defendants argue that the PSAC fails to sufficiently plead conduct sufficient to make out a First Amendment retaliation claim that occurred within the three-year limitations period, and that any conduct occurring before that cannot form the basis of a retaliation claim. Next, they argue that, even if Plaintiff was retaliated against in violation of the First Amendment, Plaintiff has failed to plausibly allege the personal involvement of either Greenberger or Grillo in the alleged retaliatory acts. Finally, they argue that Plaintiff has failed to plausibly allege that a policy or custom of retaliation against whistleblowers exists at SCA sufficient to impose liability under *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).

The court agrees that conduct occurring outside of the limitations period cannot be the basis of a retaliation claim. Limiting itself to timely conduct, the court agrees with Defendants that Plaintiff has not sufficiently pleaded the personal involvement of either of the individual defendants nor do the facts pleaded support a *Monell* claim against SCA. The court further infers from Plaintiff's briefs that Plaintiff's remaining claims have been waived.

Accordingly, Plaintiff's motion to amend is denied.

### A. Statute of Limitations for § 1983 Claims

Because § 1983 does not provide a specific statute of limitations, "courts apply the statute of limitations for personal injury actions under state law." *Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir. 2013) (citations omitted). "Section 1983 actions filed in New

York are therefore subject to a three-year statute of limitations." *Id.* (citing *Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002); N.Y. C.P.L.R. § 214). However, "federal law governs when a federal claim accrues [and] . . . under federal law, a claim accrues when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief." *DeMartino v. New York*, No. 12-CV-3319 (SJF), 2013 WL 3226789, at *13 (E.D.N.Y. June 24, 2013) (quoting *Wallace v. Kato*, 549 U.S. 384, 388 (2007) (internal quotation marks omitted) (alteration adopted)).

The court previously held, and the parties do not dispute, that Plaintiff's § 1983 claim is based on discrete acts of alleged retaliation and, accordingly, a cause of action based on any individual alleged retaliatory act accrued when the act occurred. *See Van Allen*, 2018 WL 4783966, at *5-6. Because Plaintiff initiated this action on April 10, 2017, only the alleged retaliatory acts that accrued after April 10, 2014—*i.e.* the denial of any job application occurring after that date—are timely. Accordingly, any alleged retaliatory acts that occurred prior to April 10, 2014— including his reassignment to the CMD (which, in any event, the court previously ruled as not actionable because it occurred prior to Plaintiff engaging in actual protected speech, *see Van Allen*, 2018 WL 4783966, at *9)—are time-barred.

### B. Personal Involvement of Greenberger and Grillo

"It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (quoting *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (internal quotation marks omitted)). "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the

Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (citation omitted).

The PSAC does not plausibly allege that either Greenberger or Grillo was personally involved in the rejections of Plaintiff's jobs applications that occurred within the limitations period. As such, even assuming the facts pleaded concerning the rejections could otherwise serve as the basis for an underlying constitutional claim, amendment would nonetheless be futile.

Plaintiff acknowledges that Greenberger left SCA in 2013. (*See* PSAC ¶ 9-10.) As discussed *supra*, the statute of limitations ordinarily would foreclose any claim against Greenberger absent facts plausibly establishing that she nonetheless retained *de facto* authority within the SCA such that she could nonetheless qualify as a state actor. While Plaintiff does allege that "Greenberger would not approve Plaintiff's return to . . . any inspector position" in "2014 and parts of 2015" (*Id.* ¶ 114), he provides no support for this conclusory assertion, which is facially inconsistent with her having left any position of authority within the SCA over a year prior. As such, the court declines to credit these allegations. *See, e.g., Carson Optical Inc. v. eBay Inc.*, 202 F. Supp. 3d 247, 255 (E.D.N.Y. 2016) ("[W]here plaintiff's own pleadings are internally inconsistent, a court is neither obligated to reconcile nor accept the contradictory allegations in the pleadings as true in deciding a motion to dismiss." (citations omitted)).

Plaintiff has also failed to sufficiently allege that Grillo was personally involved in the denial of his job applications. The thrust of Plaintiff's claim is that, because Grillo's responsibilities as CEO of SCA involve supervising "all aspects of the application, interview and hiring process for all inspector positions" (PSAC ¶ 90), she was therefore personally responsible for rejecting Plaintiff's job applications. However, Grillo's position at SCA, "standing alone, is an insufficient basis for the imposition of personal liability." *Edwards v. Jericho Union Free Sch. Dist.*, 904 F. Supp. 2d 294,

308-09 (E.D.N.Y. 2012) (quoting *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir.1977) (internal quotation marks omitted)); *see also Terranova v. N.Y. Dep't of Corr. & Cmty. Supervision*, 268 F. Supp. 3d 453, 456 (W.D.N.Y. 2017) ("[A] plaintiff cannot base liability solely on the defendant's supervisory capacity or the fact that he held the highest position of authority within the relevant governmental agency or department.") (citation and internal quotation marks omitted).

Plaintiff does allege that, in April 2017, SCA Vice President Gordon Tung informed Grillo of Plaintiff's desire to transfer back to the CID, but "Grillo would not agree to transfer Plaintiff and never gave a reason." (PSAC ¶ 141). Grillo's refusal to acquiesce to Plaintiff's informal request to transfer in 2017, however, is not sufficient to support a retaliation claim because, even if this sufficed to show Grillo's personal involvement, the facts alleged do not support an inference that this rejection was a consequence of the protected speech in which Plaintiff had engaged nine years earlier. *See Van Allen*, 2018 WL 4783966, at *9-12. Plaintiff does not allege that Grillo was even aware of Plaintiff's protected conduct in 2009 or of Plaintiff's belief that he was being retaliated against for protected conduct. *See Cater v. New York*, 316 F. Supp. 3d 660, 669 (S.D.N.Y. 2018) (plaintiff failed to plausibly allege § 1983 claim against a government official when she failed to allege that the official was personally aware of her complaints).

Because Plaintiff has failed to show that Defendants Greenberger and Grillo were personally involved in the alleged retaliatory job application denials, Plaintiff's motion to amend his § 1983 claim against Greenberger and Grillo would be futile.

### C. Liability of SCA

The court also finds that Plaintiff has failed to plausibly allege that a policy or custom of retaliation exists at SCA sufficient to hold it liable under *Monell*. Municipal entities "cannot be held

liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691. Instead, Plaintiff must show that he suffered a constitutional violation as the result of a "policy or custom" at the entity. *Id.* at 694. Additionally, Plaintiff "must establish a causal connection—an 'affirmative link'—between the policy and deprivation of his constitutional rights." *Vippolis v. Vill. of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985) (quoting *Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985)).

Because Plaintiff does not allege that a written policy of retaliation exists at SCA, he must show the existence of an unwritten policy or custom that is "so permanent and well settled" that it effectively has "force of law." *Monell*, 436 U.S. at 691 (citation omitted). This can be done in two ways relevant to this case. First, Plaintiff can show that a government official "with final policymaking authority" caused, through direct action or deliberate indifference, the alleged constitutional violation. *See Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 126 (2d Cir. 2004). Second, Plaintiff can allege that the unconstitutional "actions of subordinate officers are sufficiently widespread to constitute the constructive acquiescence of senior policymakers." *Sorlucco v. N.Y.C. Police Dep't*, 971 F.2d 864, 871 (2d Cir. 1992) (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 130 (1988)).

Plaintiff alleges that Defendants Greenberger and Grillo had final decisionmaking authority over hiring decisions. (*See* PSAC ¶ 90). As discussed above, however, Plaintiff has failed to plausibly allege that either Greenberger or Grillo were personally involved in the timely acts of retaliation. Thus, Plaintiff has failed to allege that an official with "final policymaking authority" caused any constitutional violation. *See Amnesty Am.*, 361 F.3d at 126 (explaining that, to hold a municipal entity liable, a plaintiff must show that the relevant official affirmatively "ordered or ratified" subordinates' unconstitutional conduct or that the official was

made aware of unconstitutional actions and "consciously chose to ignore them").

Plaintiff has also failed to present facts suggesting "widespread" unconstitutional retaliatory conduct at SCA. The PSAC focuses almost exclusively on Plaintiff's own experiences, and courts in this circuit have generally found that a plaintiff's "unique" experiences, standing alone, are insufficient to plausibly allege the existence of a "policy or custom." *See Norton v. Town of Islip*, No. 12-CV-4463 (PKC), 2016 WL 264930, at *7 (E.D.N.Y. Jan. 21, 2016) (dismissing a municipal liability claim where the plaintiff had "only alleged two incidents ... entirely unique to him"); *McLaurin v. New Rochelle Police Officers*, 373 F. Supp. 2d 385, 401 (S.D.N.Y. 2005) ("[O]ne man's experience does not make a policy."), *vacated in part on other grounds sub nom. McLaurin v. Falcone*, No. 04-4849, 2007 WL 247728 (2d Cir. Jan. 25, 2007).

Plaintiff does allege that another inspector, Sherif Khamel, was reassigned after speaking out against management at a January 2009 meeting. (PSAC ¶ 45.) This, however, is still insufficient to support an inference of a policy or custom of retaliation at SCA. *See Bowles v. N.Y.C. Transit Auth.,* No. 00-CV-4213 (BSJ), 2006 WL 1418602, at *16 n.31 (S.D.N.Y. May 23, 2006) ("[T]he combined evidence of only two incidents would still be insufficient to show a 'custom or usage' under the *Monell* standard."). Moreover, Khamel's reassignment was made in response to his comments to supervisors, which the court previously held did not constitute protected speech. *See Van Allen*, 2018 WL 4783966, at *8 (holding that only Plaintiff's complaints in 2009 to the *New York Daily News* and several elected officials outside SCA, and not his earlier comments to supervisors, were protected by the First Amendment). The PSAC does not present any facts that alter that conclusion.

Accordingly, Plaintiff has failed to plausibly allege the existence of a policy or custom sufficient to sustain a claim against SCA under *Monell*.

### D. Remaining Claims

In his response to Defendants' motion to dismiss Plaintiff's Amended Complaint, Plaintiff "discontinue[d] [his] claims . . . based upon Equal Protection . . . [and] the New York State Humans Rights Law and New York City Human Rights Law." (*See* Pl. Opp. at 17.) Nonetheless, Plaintiff retained these claims in his PSAC. (*See* PSAC ¶ 172-177, 187-203.) Plaintiff, however, did not raise any arguments involving these claims in papers related to this motion. (*See generally* Mem.; Reply.) As a result, the court infers that Plaintiff intended to abandon all claims other than his First Amendment retaliation claim. *See Jackson v. Federal Express*, 766 F.3d 189, 196 (2d Cir. 2014) ("Where abandonment by a counseled party is not explicit but such an inference may be fairly drawn from the papers and circumstances viewed as a whole, district courts may conclude that abandonment was intended.").

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's (Dkt. 37) Motion to Amend is DENIED.

SO ORDERED.

Dated: Brooklyn, New York
March 17, 2020

　　　　　　　　　　　　　　　　/s/ Nicholas G. Garaufis
　　　　　　　　　　　　　　　　NICHOLAS G. GARAUFIS
　　　　　　　　　　　　　　　　United States District Judge